# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JANICE MCMONIGLE; AMBERLY OGDEN; MOLLY SLIWINSKI; and LAUREN WELLS,<br><br>On behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BLACKOXYGEN ORGANICS USA, INC.; and MARC SAINT-ONGE,<br><br>Defendants. | CIVIL ACTION NO:<br><br>1:21-cv-04790-LMM |

## PLAINTIFFS' RENEWED MOTION FOR DEFAULT JUDGMENT

COME NOW the Plaintiffs, individually and on behalf of a class of similarly situated persons, by and through the undersigned counsel of record, and hereby move, under Fed. R. Civ. P. 55(b), for entry of default judgment against Defendants BlackOxygen Organics USA, Inc. ("BlackOxygen") and Marc Saint-Onge on the grounds that they: (1) failed to answer Plaintiffs' Complaint within the time required by law; and (2) Plaintiffs' damages can be calculated with precision based on the evidence submitted in support of this Motion, respectfully showing the Court as follows:

## BACKGROUND

The Plaintiffs in this lawsuit are four consumers who purchased BlackOxygen brand nutritional supplements between November 19, 2019, and November 19, 2021. Although marketed as wellness products or even "magical healing" products, these products contained unsafe levels of toxic heavy metals that rendered them unsafe and unfit for their purported use. The Plaintiffs brought this class action on November 19, 2021, individually and on behalf of the nearly 80,000 similar consumers against BlackOxygen and Marc Saint-Onge, the creators and purveyors of these dangerous, worthless products. (Doc. No. 1)

Following proper service, neither BlackOxygen nor Mr. Saint Onge ("Defendants") appeared in this case or responded to the Plaintiffs' Complaint. Accordingly, default was entered against Defendants on June 8, 2022. (Doc. No. 17). The Court, thereafter, certified the Plaintiffs' proposed class on October 17, 2022. (Doc. No. 22). Defendants still have not appeared in this case nor moved to open their default as of the filing of this motion.

On August 30, 2023, Plaintiffs moved for default judgment solely on the grounds of negligence and negligence per se. (Doc. No. 40). This Court denied Plaintiffs' motion without prejudice on December 7, 2023. (Doc. No. 41). In this Court's Order, the Court ruled that Plaintiffs could not recover their purely economic losses under a tort cause of action such as negligence or negligence per

se in light of Georgia's economic loss rule (*Id.*, Pg. 6).  Plaintiffs now renew their motion for default judgment and instead seek damages on Plaintiffs' claims for negligent and fraudulent misrepresentation.  As explained in more detail below, and as noted by the Court in its prior Order (*Id.*), Plaintiffs' claims for negligent and fraudulent misrepresentation are not subject to the economic loss rule.

## STATEMENT OF FACTS

The pertinent facts are that the Defendants sold unsafe "health" products via negligently supplied false information in marketing material and product labeling. (Doc. No. 1, ¶ 57).  Specifically, Defendants' marketing and labeling purported that the subject products were tested for toxic heavy metals and safe for human consumption. *Id*.  Defendants knew, as a result of their own internal testing, that the subject products contained unsafe levels of arsenic, lead, and cadmium.  (*Id*. at ¶ 57, 60).  The presence of hazardous levels of toxic heavy metals rendered the Defendants' products dangerous and unfit for human use.  (*Id*. ¶ 59).  These products were adulterated, unlawful to sell, and thus worthless.  (*Id.*, ¶ 51, 58). Defendants made the above-mentioned misrepresentations with the express intent of inducing potential customers including the class members.  (*Id*. ¶ 71).  The class members reasonably relied on the Defendants' false representations and omissions by purchasing Defendants' products.  (*Id*. at ¶ 61, 62).  But for the above-referenced representations, the class members would never have purchased the

subject products. *Id*. As a result of purchasing Defendant's worthless supplements, the class members have suffered economic injury and have been wholly deprived of the benefit of the bargain advertised by Defendants. (*Id*. at ¶ 63).

## LEGAL STANDARD

Fed. R. Civ. P. 55 allows a party to "apply to the court for a default judgment" against a defaulting defendant. Fed. R. Civ. P. 55(b)(2). Rule 55(b)(2) vests district courts with "broad discretion" to determine whether to enter a default judgment, and such decisions are reviewed only for abuse of discretion. *C&M Inv. Group, Ltd. v. Campbell*, 448 Fed. Appx. 902, 904 & 906 (11th Cir. 2011); accord *Hamm v. DeKalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985) ("The entry of a default judgment is committed to the discretion of the trial court.").

In exercising its discretion, the Court must first "investigate the legal sufficiency of the allegations of the plaintiff's complaint" to determine whether it adequately pleads a claim for relief. *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1245 (11th Cir. 2015). A complaint is sufficient for default judgment "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009)).

After entry of a default judgment, the Court must determine damages, "[h]owever, an evidentiary hearing for a determination of damages is not always required; rather, it is a decision that is left to the discretion of the Court." *Gibson v. Kirkwood Bar & Grill, LLC*, No. 1:13-CV-00308-JEC, 2014 WL 632357, at *1–2 (N.D. Ga. Feb. 18, 2014) (internal citations omitted); *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 (11th Cir. 2005) ("We have held that no such hearing is required where all essential evidence is already of record."); *Sec. & Exch. Comm'n v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981) ("Rule 55(b)(2) does not require the district court to hold either an evidentiary hearing or oral argument on a motion for a default judgment."). Entry of a default judgment without an evidentiary hearing on damages is appropriate "where all essential evidence is already of record." *Gibson*, 2014 WL 632357, at *1.

## ARGUMENT AND CITATION TO AUTHORITY

Plaintiffs have asserted claims against Defendants for negligent misrepresentation, fraudulent misrepresentation, product liability, negligence, and negligence per se. (Doc. No. 1, Pg. 12-18). Plaintiffs now move for default judgment under their theories of negligent and fraudulent misrepresentation.

Entry of default judgment is warranted because: (1) Plaintiffs' Complaint sufficiently pleads claims for negligent and fraudulent misrepresentation; (2) the correct measure of damages for Plaintiffs' misrepresentation claims is the purchase

price of the subject products; (3) the economic loss rule is inapplicable to claims for misrepresentation; and (4) the purchase price of the subject products can be determined by evidence currently before the court.

1. **Plaintiffs' Complaint Sufficiently Pleads Claims for Negligent and Fraudulent Misrepresentation**

The elements of a claim of negligent misrepresentation are "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360 (2012). Fraudulent misrepresentation's elements are identical to those for negligent misrepresentation but for the addition of: (4) knowledge that the representation was false; and (5) intention to deceive. *McLeod v. Costco Wholesale Corp.*, 369 Ga. App. 717 (2023).

In this case, Plaintiffs allege Defendants negligently supplied false information through marketing material and product labeling. (Doc. No. 1, ¶ 57). Defendants claimed that the subject products are safe for human consumption, were explicitly tested for unsafe levels of toxic heavy metals, and did not contain unsafe levels of toxic heavy metals. *Id*. Contrary to Defendants' allegations, the subject products *did* contain unsafe levels of toxic heavy metals, including arsenic, lead, and cadmium. (*Id*. at ¶ 57, 60). Defendants knew or should have known of

the presence of these unsafe heavy metals based on their internal testing. *Id*. These misrepresentations were made by Defendants with the express intent of inducing potential customers, including the class members, to purchase the subject products. (*Id*. ¶ 71). The class members reasonably relied on the Defendants' false representations and omissions by purchasing the subject products. (*Id*. at ¶ 61, 62). But for the above-referenced representations, the class members would not have purchased the subject products. *Id*. As a result of purchasing Defendant's worthless supplements, the class members have suffered economic injury and have been completely deprived of the benefit of the bargain advertised by Defendants. (*Id*. at ¶ 63). All that is left is to determine the correct measure of damages.

**2.     The Class Members' Benefit of the Bargain Damages are Equal to the Purchase Price**

As stated by the Court in *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076 at 1084 (11th Cir. 2019), "[w]hen a plaintiff receives a worthless product, his benefit of the bargain damages will be equal to the entire purchase price of the product." *Id.*; *See also: In re Zantac (Ranitidine) Products Liab. Litig.*, 546 F. Supp. 3d 1152, 1185 (S.D. Fla. 2021) ("[W]hen a product is rendered valueless due to a defect, a plaintiff receives a worthless product, and his or her damages are equal to the product's full purchase price."). Additionally, "a dietary supplement that is deemed adulterated and cannot lawfully be sold has no value." *Debernardis*, 942 F.3d at 1085.

Both the Georgia Food Act and the federal Food Drug and Cosmetic Act deem a food to "adulterated" if it bears or contains "any poisonous or deleterious substance which may render it injurious to health." O.C.G.A. § 26-2-26(1), 21 U.S.C. § 342(a)(1). Both the Georgia Food Act and the federal Food Drug and Cosmetic Act also provide that the sale of any food that is adulterated or misbranded is strictly unlawful. O.C.G.A. § 26-2-22, 21 U.S.C. § 331. Here, the Defendants violated both the Georgia Food Act and the federal Food Drug and Cosmetic Act by including unsafe levels of toxic heavy metals (arsenic, lead, and cadmium) in their products, rendering the subject products adulterated, unlawful to sell, and thus worthless. (Doc. No. 1, ¶ 51, 58). Consequently, because the class members purchased worthless adulterated products, they suffered economic harm and were totally deprived of the benefit of the bargain advertised by Defendants, and are thus entitled to the entire purchase price spent on the subject products.

### 3.     Misrepresentation is An Exception to the Economic Loss Rule

As this Court explained in its previous Order, Georgia's economic loss rule generally prevents recovery in tort where losses from a defective product are purely economic in nature. *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 366 (2012). It is well established, however, that this rule is inapplicable when the defendant has made a fraudulent or negligent

misrepresentation. (*Id.* at 366) ("Georgia has recognized two exceptions to the economic loss rule: the misrepresentation exception and the accident exception.")

The misrepresentation exception provides that one who: (1) negligently or fraudulently supplies false information in the course of business; (2) for the guidance of a foreseeable third party; and (3) with the intent for them to rely on it, shall be liable for the economic loss suffered as a result of such misrepresentation:

> [O]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

*Robert & Co. Associates v. Rhodes-Haverty P'ship*, 250 Ga. 680, 681 (1983).

This rule, adopted by the Supreme Court of Georgia in *Robert & Co*, allows a remedy for the pecuniary losses of those harmed by such misrepresentations. *Robert & Co*, 250 Ga. 680, 681. This exception is broad, requires no showing of an intention to deceive, and protects anyone who could foreseeably rely on the misrepresentations, even in the absence of privity. *Id*.

Here, Defendants negligently and/or fraudulently supplied false information through marketing material and product labeling when they claimed the subject products were safe for human consumption and did not contain unsafe levels of toxic heavy metals. (Doc. No. 1, ¶ 57). Based on their internal testing and

documentation, the Defendants knew or should have known this to be untrue. (Doc. No. 1, ¶ 60).  Defendants specifically intended the class members to rely on these misrepresentations, and the class members did in fact rely on these misrepresentations by purchasing Defendants' adulterated and worthless products. (Doc. No. 1, ¶ 71, 61, 62).  Thus, because Plaintiffs have alleged that they were harmed by Defendants' negligent and fraudulent misrepresentation, and because the economic loss rule does not apply to these claims, Plaintiffs are entitled to recover the purchase price of the subject products from Defendants.

**4.     The Class Members' Damages Can be Determined by the Evidence Already Contained in the Record**

An evidentiary hearing is unnecessary in this matter because the Court can calculate the class's damages using the evidence contained in the record.  Here, the class seeks to recover the purchase price of the worthless BlackOxygen products they purchased from November 19, 2019, through November 19, 2021.  During the discovery phase of this case, Plaintiffs served sixteen subpoenas.  Plaintiffs' counsel also directly contacted more than 70,000 potential class members and conducted in-depth interviews with over one-hundred class members who had heightened knowledge of Defendants' business practices.  Those efforts have resulted in a comprehensive understanding of the damages suffered by the class.  Plaintiffs have compiled more than 20,000 pages of Defendants' financial data from banking records, accounting software, internal spreadsheets, and similar

documents obtained from third-party vendors.  (Doc. No. 40-1, Exhibit A – Declaration of Matthew Wetherington); *See also:* (Doc. No. 40-2, Exhibit B – Declaration of Craig Hung).

The chief and foremost evidence regarding the damages suffered by the class is the BlackOxygen Organics Company Sales Master Spreadsheets, which were obtained from Defendants' bookkeeper and corroborated by internal documents provided by BlackOxygen brand partners.  The spreadsheet contains the names, addresses, email addresses, purchase history, and other sensitive financial and personal data about every BlackOxygen customer.  (Doc. No. 40-1, Exhibit A – Declaration of Matthew Wetherington).  After filtering the spreadsheet to reflect only United States customers during the class period ─ November 19, 2019, through November 19, 2021 ─ 62,051 customers purchased a total of 91,095 units of BlackOxygen products.  *Id*.  During that time, each order or unit of sale ordinarily had a retail price of at least $95.  (Doc. No. 40-3, Exhibit C - Louise Harris Declaration).  Taken together, the class members spent $8,654,025 on BlackOxygen Organics Products.

In the months leading up to, and after, the closure of BlackOxygen, certain customers initiated refunds through their credit cards.  Individuals who received a full refund have no damages in this class and should be excluded.  Plaintiffs obtained transaction data from Defendants' credit card processing contractor,

Elavon, Inc. (Doc. No. 40-4, Exhibit D - Timothy Frost Affidavit and Declaration). Those records include the names, dates, and additional transaction information for each refund. (Doc. No. 40-1, Exhibit A - Affidavit of Matthew Wetherington). Raw chargeback data from Elavon shows that $1,099,421.41 of chargebacks were processed by Elavon. *Id.* Therefore, the class's damages equal their purchases minus the chargebacks: $7,554,603.59.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request the Court grant Default Judgment for the class against Defendant Marc Saint-Onge and Defendant BlackOxygen Organics USA, Inc. in the amount of $7,554,603.59. Additionally, Plaintiffs request that the Court (1) grant Plaintiffs six months to conduct discovery and recover funds under this judgment, and (2) reserve ruling on an award of attorneys' fees, costs, and punitive damages until after Plaintiffs have made a showing of funds. Plaintiffs have submitted a Proposed Order for the Court's consideration.

Respectfully submitted this 28th day of March, 2024.

**WETHERINGTON LAW FIRM, P.C.**

*/s/ James T. Cox*
MATTHEW Q. WETHERINGTON
Georgia Bar No. 339639
ROBERT N. FRIEDMAN
Georgia Bar No. 945494
ELI J. COHEN

1800 Peachtree St., NW
Suite 370
Atlanta, Georgia 30309

P/F: (404) 888-4444  
matt@wfirm.com  
robert@wfirm.com  
eli@wfirm.com  
james@wfirm.com  

Georgia Bar No. 862571  
JAMES T. COX  
Georgia Bar No. 296191  

**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE AND COMPLIANCE WITH LOCAL RULE 7.1(D)

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing document has been prepared in accordance with Local Rule 5.1(c) (Times New Roman 14-point font). I hereby certify that I have served a copy of the foregoing **Plaintiffs' Renewed Motion for Default Judgment** by using the CM/ECF system which will automatically send notification of such filing to all parties.

This 28th day of March, 2024.

**WETHERINGTON LAW FIRM, P.C.**

*/s/ James T. Cox*
JAMES T. COX
Georgia Bar No. 296191

1800 Peachtree St., NW
Suite 370
Atlanta, Georgia 30309
P/F: (404) 888-4444
james@wfirm.com

-14-